Samuel Henderson (SBN: 279717)
henderson@hendersonconsumerlaw.com
2182 El Camino Real, Suite 202
Oceanside, CA, 92054
(760) 575-4594
(760) 688-3732

Attorney for Plaintiff,
Linda Kirch

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA KIRCH<br><br>                Plaintiff,<br><br>vs.<br><br>NISSAN MOTOR ACCEPTANCE CORPORATION, VITAL RECOVERY SERVICES, a corporation, and DOES 1 through 10<br><br>                Defendant(s). | Civil Action No. **'13CV2968 W   NLS**<br><br>COMPLAINT<br><br>DEMAND FOR JURY TRIAL<br><br>(Violations of the Fair Debt Practices Act, Rosenthal Fair Debt Practices Act, Fair Credit Reporting Act) |

# COMPLAINT

## I. INTRODUCTION

1. This is an action for damages brought by an individual consumer against defendant Vital Recovery Services, Inc (hereinafter "Vital") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA") and the California Rosenthal Fair Debt Collection Practices Act, Cal Civ. Code. § 1788, *et*

*seq.* (hereinafter "RFDCPA") violations and against defendant Nissan Motor Acceptance Corporation (hereinafter "Nissan") of for illegal debt collection activities under the RFDCPA and credit reporting violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (hereinafter "FCRA").

## II.  JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681p, 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.  Venue is also proper in this judicial district pursuant to 15 U.S.C. § 1692k(d) in that Defendants transact business in this judicial district and the violations of the FDCPA complained of occurred in this judicial district.

## III.  PARTIES

4. Plaintiff, Linda Kirch, is a natural person residing in this district. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c), is a debtor as defined by the RFDCPA, Cal. Civ. Code § 1788.2(h) and is a consumer as defined by the FDCPA, 15, U.S.C. § 1692a(3).

5. Defendant Vital Recovery Services, Inc. is a Georgia corporation with its entity location listed with the California Secretary of State as 3595 Data Dr. Ste. 200, Norcross CA 90092.  The principal purpose of Defendant is the collection of debts using the mails and telephone, and Defendant regularly attempts to collect debts alleged to be due another.

6. Defendant Vital is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) and the RFDCPA, Cal. Civ. Code § 1788.2.

7. Defendant Nissan Motor Acceptance Corporation is a California corporation located in Dallas Texas with a postal address listed with the California Secretary of State of P.O. Box 650214, Dallas TX 75063.

8. Defendant Nissan is a "debt collector" as defined by the RFDCPA, Cal. Civ. Code § 1788.2 and is a "person" as defined by the FCRA, 15 U.S.C. § 1681a(b).

## IV. FACTUAL ALLEGATIONS

9. Mrs. Kirch leased a Nissan Rogue (hereinafter "Rogue") in or around May of 2009. Over the next few years she regularly made her payments. In 2012 she was notified that her lease was coming to an end and she would need to bring it in.

10. In July of 2012 Mrs. Kirch brought her Nissan Rogue to Mossy Nissan locate in San Diego County, California. At or before this time Mrs. Kirch made the final payment due on the Rogue.

11. When Mrs. Kirch brought in the Rogue no employee went over the vehicle with her to identify any damage that may result in more money being owed nor was Mrs. Kirch told of any other reason that she may owe any other money on the Rogue.

12. Mrs. Kirch attempted to lease a new Nissan but was refused, being told it was because of previous late payments. Instead, employees at Mossy Nissan instead sold Mrs. Kirch a new vehicle with a relatively high APR for new vehicles.

13. Mrs. Kirch specifically asked, after all the paperwork on both vehicles were complete, whether there was anything else for her to deal with and was told that "We're good to go."

14. After this time Mrs. Kirch has never received a bill from Nissan relating to the Rogue after she turned it in.

15. Mrs. Kirch was shopping for a home loan with her husband in order for the couple to purchase their own home. It was only at this time that Mrs. Kirch became aware that Nissan was reporting that she owed Nissan $1,044 on what appears to be the Rogue. Nissan's tradeline showing this overdue, and at this time, very late, amount significantly hurt Mrs. Kirch's chances of being able to obtain a mortgage with her husband. A mortgage broker told Mrs. Kirch that she would have to fix the Nissan tradeline if she wanted to get a mortgage.

16. Dumbfounded, considering that she had previously not been told of any issue nor had she received any bills for it, Mrs. Kirch called Nissan and was told that she must talk to Vital about the issue.

17. Mrs. Kirch then called Vital on or around January 10, 2013 and spoke to a debt collector there. Mrs. Kirch had no idea why Nissan was alleging that she owed any money and so asked for some type of documentation. Vital faxed over a few documents identifying amounts charged and some alleged damages to the vehicle. Mrs. Kirch called Vital back and disputed owing what Nissan was alleging. Mrs. Kirch was not aware of any damage to the Rogue that would result in extra costs and Mrs. Kirch had attempted to lease a new Nissan and was rejected, but then purchased a new Nissan and was told that everything was ok. Mrs. Kirch also completed the entire lease program so no early termination fee should apply.

18. When told that she was disputing the debt, Vital's agent told her that she should not because then the debt would show up as disputed and that would be even worse. Mrs. Kirch was also told that it would be best to pay off the debt first then try to talk to Nissan about the credit reporting.

19. Mrs. Kirch asked if she could pay by credit card and was told that she should pay by a bank transfer or other type of payment because a credit card payment would take thirty to sixty days to process.

20. Mrs. Kirch never received any other documents from Vital besides the faxed documents and was never provided with the information contained in 15 U.S.C. 1692g and Cal. Civ. Code § 1812.700. The faxed documents Mrs. Kirch received did not inform Mrs. Kirch that Vital was a debt collector and was attempting to collect a debt and that any information obtained would be used for that purpose.

21. Still upset and disagreeing that she owed anything, Mrs. Kirch spoke with employees at Nissan about this matter. At one point Mrs. Kirch was informed that she had to pay a fee because she did not lease a new vehicle. Upset by this, as Mrs. Kirch had attempted to lease a new vehicle from Nissan but was rejected, Mrs.

Kirch demanded a copy of her lease agreement that allowed Nissan to charge such a fee. During one of the phone conversations with a Nissan employee, who aggressively questioned why Mrs. Kirch was so insistent on obtaining a copy of the lease, told Mrs. Kirch that the fee she was being charged was not contained in the lease contract.

22. Mrs. Kirch was first provided an illegible copy that could not be reasonably read, then was provided a copy of some other individual's lease. Finally, upon repeated requests, Mrs. Kirch was provided what appears to be Mrs. Kirch's lease agreement. The agreement does not provide a fee for not leasing a new vehicle.

23. In 2013 Mrs. Kirch has had multiple lines of credit be either reduced or removed. Upon information and belief this is due to the false credit tradeline Nissan has filed. Upon information and belief, the reduction or removal of Mrs. Kirch's lines of credit has reduced Mrs. Kirch's credit score and thereby damaged Mrs. Kirch's ability to get a mortgage and/or the rate of a mortgage Mrs. Kirch may be able to obtain.

24. In June of 2013 Mrs. Kirch wrote to Nissan, disputing that she owed what they allege that she owed and requesting that they remove false information from her credit report as it was harming her ability to purchase a home.

25. Also in June of 2013 Mrs. Kirch wrote to the various credit reporting agencies, disputing the Nissan tradeline.

26. On information and belief, TransUnion, LLC, a credit reporting agency, informed Nissan of the dispute.

27. On information and belief, Nissan negligently and willfully updated the TransUnion, LLC tradeline in that it contains false or inaccurate information, including the failure to note that Mrs. Kirch disputed the tradeline.

## V. FIRST CLAIM FOR RELIEF – FAIR DEBT COLLECTION PRACTICES ACT

28. Plaintiff repeats and re-alleges and incorporates by reference paragraphs one through twenty-seven above.

29. Plaintiff brings the first claim for relief against Defendant Vital under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

30. Plaintiff is a "consumer" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(3).

31. Vital is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(6) in that they regularly collect consumer debts allegedly owed to a creditor.

32. The financial obligation alleged to be owed by Plaintiff is a "debt" as that term is defined by the FDCPA, 15 U.S.C. § 1692a(5).

33. Defendants violated the FDCPA. Defendant's violations include, but are not limited to, the following:

  a. Defendants violated 15 U.S.C. §§ 1692g by failing to inform Plaintiff of her rights under that statute.
  b. Vital violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692f(1) by repeatedly misrepresenting that Plaintiff owed Nissan money.
  c. Vital violated 15 U.S.C. §§ 1692e and 1692d by telling Plaintiff to not dispute the debt and that disputed debts look even worse, thereby misleading Mrs. Kirch about her statutory rights and the effect of those rights.
  d. Vital violated 15 U.S.C. § 1692e(11) by failing to provide the necessary disclosures that Vital was a debt collector, it was attempting to collect a debt, and any information obtained would be used for that purpose.
  e. On information and belief, Vital violated 15 U.S.C. § 1692e by misrepresenting that a credit card payment would take thirty to sixty days to process.

34.     As a result, Plaintiff suffered damages.

## VI.  SECOND CLAIM FOR RELIEF – ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

**(Against Nissan and Vital)**

35.     Plaintiff brings the second claim for relief against Nissan and Vital under the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code § 1788 *et seq.*

36.     Plaintiff repeats and re-alleges and incorporates by reference paragraphs one through twenty-four above.

37.     Plaintiff is a "debtor" as that term is defined by the RFDCPA, Cal Civil Code § 1788.2(h).

38.     Defendants are "debt collectors" as that term is defined by the RFDCPA, Cal. Civil Code § 1788.2(c) and their actions were willful.

39.     The financial obligation alleged to be owed by Plaintiff is a "consumer debt" as that term is defined by the RFDCPA, Cal. Civil Code § 1788.2(f).

40.     Defendant Nissan violated the RFDCPA.  Nissan's violations include, but are not limit to, the following violations of California Civil Code § 1788.17:

    a. Nissan violated 15 U.S.C. §§ 1692e(2)(A) and 1692f(1) by misrepresenting the amount of the debt due to an alleged fee not contained in the lease agreement and for alleged excessive wear and tear.

    b. Nissan violated 15 U.S.C. § 1692f(1) by attempting to charge Mrs. Kirch a fee for not re-leasing a Nissan when the lease does not allow for any such charge or alternatively, Nissan breached its good faith obligation of fair dealing in refusing to allow Mrs. Kirch to lease another Nissan.

    c. If the fee charged Mrs. Kirch was not for her failure to obtain a new lease, Nissan violated 15 U.S.C. § 1692e by alleging that it was the failure to obtain a new lease that resulted in the fee.

41. Defendant Vital violated the RFDCPA. Nissan's violations include, but are not limit to, the following violations:

    a. Defendant Vital violated California Civil Code § 1812.700 by failing to provide Mrs. Kirch with her statutory notifications and as such pursuant to California Civil Code § 1812.702 such a failure is a violation of the RFDCPA.

    b. Defendant Vital violated California Civil Code § 1788.17 by violating the FDCPA as outlined in the First Claim for Relief.

42. As a result, Plaintiff suffered damages.

## VII. THIRD CLAIM FOR RELIEF – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 *et seq.*

43. Plaintiff brings the third claim for relief against Nissan.

44. Plaintiff repeats and re-alleges and incorporates by reference paragraphs one through forty-two above.

45. At all times pertinent to this claim, Nissan was a "furnisher" as that term is defined by the FCRA.

46. Upon information and belief, Nissan negligently or willfully failed to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b) in that Nissan has continued to report false or inaccurate information after Mrs. Kirsch disputed the tradeline with TransUnion, LLC.

47. Upon information and belief, Nissan regularly fails to notify the credit reporting agencies that a debt is disputed.

48. As a result, Mrs. Kirsch has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and Plaintiff be awarded damages from Defendant, as follows:

    a. Actual damages according to proof;

    b. An award of statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n along with attorney's fees and costs.

    c. An award of punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).

    d. An award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    e. An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3);

    f. An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);

    h. An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c).

    i. Award Plaintiff any other relief as may be just and proper.

## JURY DEMAND

Plaintiff demands trial by jury of all triable issues of fact in the above captioned case.

                                      s/ Samuel Henderson
                                      Samuel Henderson
                                      Attorney for Plaintiff

                                      Respectfully submitted,

Date:  December 9, 2013        /s/ Samuel Henderson
                                      Samuel Henderson
                                      Attorney for Plaintiff Linda Kirsch
                                      Henderson@hendersonconsumerlaw.com